OPINION OF THE COURT
Arthur S. Hirsch, J.
Plaintiff herein was admitted to Wagner College in September, 1976 for their fall semester. In January, 1977, she was notified by the college of her suspension effective for the spring semester, with leave to apply for admission for the 1977 fall semester, in which event her application would then be considered on its merits. In February, 1977, plaintiff instituted the instant action in equity, seeking a judgment for money damages and an order compelling defendant school to reinstate her to student status.
The basis of plaintiffs claim for damages rests on her being prevented by the school’s alleged arbitrary actions from completing her education. She contends that she could not apply to any other school of higher education for fear that she would be denied acceptance as a result of the Wagner College suspension on her record. Plaintiff testified that she has neither attended school, nor has she been employed since her suspension from Wagner College, until the present date. Her status at Wagner College was that of a nonmatriculating part-time student, registered for only three subjects. Her educational goals were evidently scaled to a more leisurely basis than that of an average full-time college student and, as such, the loss she sustained, if any, was negligible. The tuition paid by plaintiff for the spring, 1977 semester was returned to her and she could have applied for admission to a different college, if not for the spring semester, than at least for the fall, 1977 term. It is conceivable that she may have been an acceptable candidate to another school or to a community college had she made application.
This court finds that plaintiff has not sustained her burden *512 of proving damages and dismisses the complaint only as to claims for special and punitive damages. It will, however, consider the question of whether Wagner College acted arbitrarily in regard to the suspension of plaintiff, and whether the suspension was violative of plaintiff’s due process rights.
At the trial, defendant produced as witnesses a number of faculty members and staff of the college, and testimony was heard as to plaintiff’s academic problems, as well as her social behaviour. Plaintiff’s Latin professor testified that her conduct in his class during the semester was very often disruptive and unusual, that she did not participate in class work, and did not know the required material. He stated that plaintiff appeared for the final examination on December 20, 1976, but instead of handing in her examination answer booklet, tore it up at the end of the period and walked out of the examination room. He further testified that just after the day of the examination, plaintiff’s conduct became abusive and intolerable. In frequent telephone calls to his home at all hours, on one occasion at 4 a.m., she was either threatening or incoherent. On one occasion, she appeared in a distraught condition at his home, but he would not allow her to enter. Although plaintiff denied making more than one telephone call, other witnesses for the defendant, including a police officer, substantiated the professor’s testimony.
A secretary to one of the deans at Wagner College testified that on January 10, 1977 on the direction of the dean, she telephoned and spoke with the mother of plaintiff to arrange a meeting with plaintiff, her parents, and the school officials to discuss plaintiff’s academic and disciplinary problems. Plaintiff’s mother refused to attend any meeting. The witness further testified that the plaintiff came to her office the following day and on subsequent days displaying extreme irrational behaviour.
On January 11, 1977, plaintiff was informed verbally that she was to be suspended. On January 12, 1977, an appointment was made for plaintiff by another dean of the college and they met on January 13. He, too, described her behaviour as irrational at that meeting, and at subsequent meetings made on the initiative of plaintiff at unscheduled hours. On January 13, after consultation by the dean of students with the Latin professor and various other faculty members, a letter was sent to plaintiff officially informing her of her suspension.
*513 DUE PROCESS
It has long been established that due process constitutional guarantees are not applicable when a student is dismissed or suspended for academic deficiencies (Brookins v Bonnell, 362 F Supp 379). That position is taken on the rationale that judicial officials are not as well qualified as academicians in determining scholastic aptitude. It would, therefore, be inappropriate for the courts to intrude into the domain of academic standards.
There are a myriad of cases holding that a student is entitled to full due process, notice and hearing, if he is suspended or expelled for disciplinary reasons from tax-supported colleges or universities (Brookins v Bonnell, supra). However, student disciplinary procedures in private institutions will be circumscribed by constitutional safeguards only if the State is involved in the activities of the college in a meaningful way (Powe v Miles, 407 F2d 73; Grossner v Trustees of Columbia Univ. in City of N. Y., 287 F Supp 535; Matter of Kwiatkowski v Ithaca Coll, 82 Misc 2d 43). This "State involvement” concept has usually been applied in situations dealing with organized campus demonstrations and, indeed, the New York Legislature promulgated section 6450 of the Education Law to set policy and procedure for those disciplinary occurrences. State intrusion into private school disciplinary policies is only permitted where the State has a signiñcant involvement beyond the granting of State aid or the application by the State of regulations of educational standards (Powe v Miles, supra).
Another theory to consider in disciplinary proceedings is the doctrine of implied contract that exists between the college and its students. Under this concept, a student impliedly agrees not to be guilty of misconduct that would be subversive to the discipline of the college. A court may not review a college’s decision to expel a student if the school has made its determination based on facts within its knowledge and in the exercise of its honest discretion (Carr v St. John’s Univ., N. Y., 17 AD2d 632, affd 12 NY2d 802).
WAGNER COLLEGE
The suspension of plaintiff herein appears to be bottomed on the Wagner College faculty’s doubt concerning plaintiff’s fitness, both academically and emotionally. Such *514 judgment was not without a real basis. The decision to suspend plaintiff on the basis of her academic performance cannot be disturbed nor reviewed by this court as it is within the purview and discretion of the school to suspend plaintiff on that ground. This is especially so inasmuch as plaintiff was a part-time nonmatriculating student and her refusal to hand in her examination was a fair indication of her inability to cope with the course which consisted of one third of her curriculum.
The disciplinary aspects of the suspension of plaintiff bring the due process considerations into focus.
Plaintiff’s objectionable actions were not part of a public campus demonstration, and the provisions of section 6450 of the Education Law are not relevant. Wagner College is a privately supported college affiliated with the Lutheran Church and operates without significant State intervention or activity. Thus, the enforcement of the suspension of plaintiff cannot be catergorized as a "State action” subject to constitutional requirements of due process.
The implied contractual agreement with plaintiff only obligated the school to act unarbitrarily and in good faith, on knowledge derived from the faculty’s experience, observations and expert evaluation of her progress, her scholastic aptitude and her conduct. Manifest emotional problems are a severe obstacle to positive academic achievement, not only to the particular student involved, but to the entire class. The contractual obligation of the school to other students requires that the college provide an atmosphere conducive to learning, which enables the faculty to teach and permits students to engage in the advancement of knowledge, free from external pressures, interference and disturbances. It follows that the school could not contractually perform their obligations to the rest of the student body if plaintiff were allowed to continue attending classes.
The testimony of defendant’s witnesses, many of whom are respected, prominent members of the Wagner College teaching and administrative faculty, was extremely credible. From all of the testimony offered by both sides, the court concludes that the school handled a most difficult and delicate situation with sensitivity and fairness. They acted reasonably in offering to set up an appointment prior to the suspension to discuss plaintiff’s scholastic problems with the family and the student. Under less unusual circumstances, written notice of a hearing *515 would be preferred. The school’s informal approach of speaking directly with the parent to set up a conference was conceived by the faculty as being in the best interests of plaintiff. In light of the emotional difficulties manifested by the student, the court agrees with that evaluation and is of the opinion that the school acted reasonably with honest discretion based on facts that justified the exercise of their discretion.
The relief requested by plaintiff for reinstatement to the school is, accordingly, denied.