2000 OK CIV APP 66

**Paul Brandon BITTLE, Plaintiff/Appellant,**

v.

**OKLAHOMA CITY UNIVERSITY, a not-for-profit corporation, and the Board Of Trustees of Oklahoma City University, Defendants/Appellees.**

**No. 93,684.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 21, 2000.

510

Elizabeth J. Bradford, Midwest City, Oklahoma, For Appellant.

James C. Chandler, G. David Ross, B. Gore Gaines, Lytle, Soulé & Curlee, P.C., Oklahoma City, Oklahoma, For Appellees.

JOPLIN, Judge:

¶ 1 Plaintiff/Appellant Paul Brandon Bittle (Bittle) seeks review of the trial court's order granting judgment to Defendants/Appellees Oklahoma City University, a not-for-profit corporation (OCU), and the Board of Trustees of Oklahoma City University (Board), in Bittle's action to recover damages for alleged fraud, breach of contract and negligence after OCU dismissed Bittle for academic reasons. In this proceeding, Bittle asserts judgment for OCU and Board should be reversed because (1) his initial petition stated a valid claim for breach of contract, (2) the evidence on summary judgment relative to his claims was conflicting, and (3) the trial court erred in denying him both further discovery prior to ruling and permission to amend to cure any defect in pleading.

¶ 2 OCU is a private university, organized as a not-for-profit corporation and governed by Board. OCU admitted Bittle to the OCU Law School for the fall semester of 1997. But, when Bittle's cumulative grade-point average fell below the minimum required by OCU academic standards after the fall semester of 1998, OCU dismissed him. Pursuant to OCU policy, Bittle sought administrative review, but upon consideration of the matter, OCU denied him relief.

¶ 3 Bittle then commenced the instant action against OCU and Board. In particular, Bittle alleged that his constitutional law professor frequently arrived late for class, discharged class early, or canceled class altogether; that neither the professor nor OCU provided make-up classes or academic counseling to assist students as OCU implicitly agreed; and that the failures of the professor (OCU's agent), OCU and Board in these particulars caused his academic dismissal. Bittle also alleged that OCU's internal administrative appellate procedure denied him the fundamental protection of constitutional due process, including denial of the right to examine the evidence against him,[1] to present evidence on his own behalf, and even the right to a hearing at all. On these facts,

---

1. Bittle later averred in response to the motions to dismiss/motion for summary judgment OCU's denial of his requested access to records—allegedly destroyed—on which OCU relied both in reaching the dismissal decision and in denying him administrative relief.

Bittle asserted claims for fraud, breach of contract, tortious breach of contract, negligence, unjust enrichment and violation of his right to due process, seeking actual and punitive damages.

¶ 4 OCU filed a motion to dismiss, asserting Bittle's failure—on the alleged facts of the case—to state an actionable claim under any legally recognized theory of recovery.[2] Board filed a motion for summary judgment/motion to dismiss, asserting no liability—as OCU's not-for-profit corporate governing body—for any OCU act or omission of which Board had no knowledge or in which Board did not actively participate, and no contractual relationship between Bittle and Board.[3]

¶ 5 Bittle responded to OCU's motion to dismiss, arguing viability of all claims stated in his petition, or alternatively, in the event a ruling favorable to OCU, permission to amend to cure any defects in pleading.[4] Bittle also responded to Board's motion for summary judgment/motion to dismiss, asserting—in essence—material facts in controversy concerning each of his legally recognized claims, precluding summary judgment.[5] On consideration of the briefs, submitted materials and arguments of the parties, the trial court granted judgment to OCU and Board. Bittle now appeals, and the matter stands submitted on the trial court record.[6]

¶ 6 As a general proposition, "[t]he applicable test for appraising the sufficiency of a pleading challenged for failure to state a claim upon which relief may be granted teaches that no dismissal may be effected unless it should appear beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief." *Dyke v. Saint Francis Hosp., Inc.*, 1993 OK 114, ¶ 7, 861 P.2d 295, 298–299. Stated otherwise, "[a] petition can generally be dismissed only for lack of any cognizable legal theory or for insufficient facts under a cognizable legal theory." *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894.[7] Yet, "if [a] dismissal motion also tenders for consideration materials [outside] the pleadings," the motion to dismiss is treated and reviewed as a motion for summary judgment. *Dyke*, 1993 OK 114, ¶ 7, 861 P.2d at 299.

¶ 7 In this respect, "Oklahoma procedural law dictates that summary judgment is appropriate only when it appears that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law." *Flanders v. Crane Co.*, 1984 OK 88, ¶ 10, 693 P.2d 602, 605; Rule 13(e), Rules for the District Courts of Oklahoma, 12 O.S., Ch. 2, App. More particularly:

Summary judgment is proper only when there is no genuine issue of material fact. (Citation omitted.) The burden is on the moving party to establish, through eviden-

---

**2.** In support of its motion to dismiss, OCU attached a copy of the accreditation standards promulgated by the Oklahoma Regents of Higher Education, arguing the Regents to be the only authority with power to redress an accredited university's sub-standard performance, i.e., the assertion by Bittle of OCU's violation of the accreditation standards gave rise to no private right of action by Bittle against OCU.

**3.** To its motion for summary judgment/motion to dismiss, Board attached the affidavit of the Chairman of Board attesting that neither the issues raised by Bittle, nor review of Bittle's dismissal, had ever been presented to Board. The Chairman also attested that Board had no contractual relationship with Bittle, and that the members of Board, either collectively or individually, reaped no benefit from Bittle's enrollment at OCU, the Board members serving without compensation.

**4.** In support, Bittle attached a copy of his petition and an affidavit, in which he attested to the alleged deficiencies of his constitutional law professor, and to absence of a program providing academic assistance to OCU students.

**5.** Bittle attached a copy of the Regent's accreditation standards, arguing the standards minimally required OCU to adopt internal procedures affording OCU students due process.

**6.** Rules 4(m), 13(h), Rules for District Courts, 12 O.S. Supp.1993, Ch. 2, App., and Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp. 1997, Ch. 15, App.

**7.** *See also, Iacampo v. Hasbro Inc.*, 929 F.Supp. 562, 567 (D.R.I.1996) ("Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law.")

tiary material attached to the motion for summary judgment, that no genuine issue as to any material fact exists. (Citation omitted.) Thereafter, the opposing party must submit a statement of material facts which the party alleges are controverted and which are supported by evidentiary materials. (Citation omitted.)

*Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 7, 963 P.2d 572, 574. "[A] summary judgment ruling must be made on the record actually presented by the litigants, not on a record potentially possible. (Citation omitted.)" *Prudential Ins. Co. of America v. Glass*, 1998 OK 52, ¶ 3, 959 P.2d 586, 588. That is, "[a]lthough the allegations of the pleadings standing alone may raise an issue of material fact, summary judgment is not to be denied if other documentation pertinent to the motions palpably show the absence of such an issue." *Weeks v. Wedgewood Village Inc.*, 1976 OK 72, ¶ 12, 554 P.2d 780, 784.

¶ 8 On appeal from an order granting summary judgment, we review by a de novo standard. *Prudential Ins. Co. of America*, 1998 OK 52, ¶ 2, 959 P.2d at 588. That is, "this Court will examine [the] pleadings and evidentiary materials to determine what facts are material and whether there is substantial controversy as to one material fact. (Citation omitted.)" *Sperling v. Marler*, 1998 OK 81, ¶ 3, 963 P.2d 577, 579. "If [a] substantial controversy as to a[ny] material fact exists, then summary judgment is improper." *Id.*

¶ 9 In the present case, insofar as OCU's motions and Bittle's responses tendered for consideration evidentiary materials outside the pleadings, the parties and the trial court treated the motions to dismiss as motions for summary judgment. Accordingly, we review the trial court's order under summary judgment standards.

¶ 10 In two related propositions, Bittle complains the trial court should have granted him both further discovery prior to ruling and permission to amend his petition to cure any defects in pleading. As to the further-discovery issue, we find no affidavit of counsel attesting an inability to respond and need for further discovery contemplated by Rule 13(d), Rules for the District Courts of Oklahoma, 12 O.S., Ch. 2, App.[8] In the absence of a specific request for further discovery supported by an affidavit of counsel attesting to the need therefor, we cannot say the trial court erred in refusing further discovery.

¶ 11 As to the permission-to-amend issue, "the trial court has always possessed discretion over whether to allow an amendment to a pleading," and "[i]ts decision will not be overturned absent an abuse of that discretion," but "the trial court's discretion is limited by the provisions of 12 O.S. 1991, § 2015(A), requiring that leave to amend be given freely if justice requires." *Prough v. Edinger, Inc.*, 1993 OK 130, ¶ 8, 862 P.2d 71, 75–76. That is, while the " 'outright refusal to grant leave [to amend] without any justifying reason appearing for the denial' is an abuse of discretion, ... there is no abuse if the court relies on a reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment.' " *Prough*, 1993 OK 130, ¶ 9, 862 P.2d at 76.[9]

¶ 12 In denying Bittle's alternative prayer to amend, the trial court in the present case must have implicitly believed Bittle could not amend to state a cognizable claim, i.e., that amendment would be "futile." In order to determine whether the trial court abused its discretion in denying Bittle's request to amend,[10] we must consequently first determine whether Oklahoma law recognizes an actionable tort or contract claim arising out of the relationship between an educational

---

8. "Should it appear from an affidavit of a party opposing the motion that he cannot for reasons stated present facts essential to justify his opposition, the court may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

9. Quoted from *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

10. Shown by the record before us only in one of Bittle's responsive pleadings to the motions to dismiss/motion for summary judgment.

institution and a student for the institution's alleged failure in its educational mission and obligation to its students.

¶ 13 Bittle asserts in four of eight propositions in his petition in error that his relationship with OCU is predominantly contractual in nature; that the law of contracts—ignored by the trial court—consequently governs the rights and remedies of the parties; that he presented evidentiary materials arguably demonstrating OCU's breach of the parties' contract to provide him educational services in accord with this state's regulatory norms; and that OCU presented no evidence to the contrary, requiring reversal of the trial court's order. In one of his two remaining propositions, Bittle complains the trial court erred in treating his claims as sounding in tort for educational malpractice.

■■■ ¶ 14 The great weight of authority generally holds that the law recognizes no cause of action for "educational malpractice," either in tort or contract, by a student against a private educational institution asserting inadequate or improper instruction. *See, e.g., Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Swidryk v. St. Michael's Medical Ctr.*, 201 N.J.Super. 601, 493 A.2d 641 (1985); *Paladino v. Adelphi University*, 89 A.D.2d 85, 454 N.Y.S.2d 868 (1982). The courts uniformly reason that such a claim runs afoul of established public policy which both accords educational institutions broad discretion in matters purely academic, particularly in the evaluation of student performance, and directs judicial non-interference in decisions within that discretion. *Id.* As the New Jersey Superior Court analyzed the obstacles inherent in application of a tort theory of recovery:

... For one, the conflicting theories of the science of pedagogy prevent[s] the construction of a workable rule of care. In other words, different but acceptable scientific methods of academic training ma[k]e it unfeasible to formulate a standard by which to judge the conduct of those delivering the services. Second, the nature of the claim prevents a finding of legal causation. For example, failure in schools could stem from a variety of fac-

tors including the student's physical, neurological, emotional, cultural and environmental background, as well as the actual system itself. Lastly, school systems are already beset by social and financial problems for which no solution is yet available. To expose the schools to liability in light of the above policy considerations would be an undue burden on society. (Citation omitted.)

. . .

[Moreover:]

To entertain a cause of action for "educational malpractice" would require the courts not merely to make judgments as to the validity of broad educational policies—a course we have unalteringly eschewed in the past—but, more importantly to sit in review of the day-to-day implementations of those policies. Recognition in the courts of this cause of action would constitute blatant interference with the responsibility for the administration of the ... school system.... (Citation omitted.)

*Swidryk*, 493 A.2d at 643. On this rationale, decisions from other states in the main hold where a student is dismissed from a private educational institution for academic reasons and brings suit asserting improper or inadequate instruction, no cause of action either in tort or contract arises. "Liability of private school or educational institution for breach of contract arising from expulsion or suspension of student," 47 A.L.R.5th 1, 89, § 23 (1997).

¶ 15 That said, however, we find some authority which suggests that an educational institution's brochures, policy manuals and other advertisements may form the basis of a legally cognizable contractual relationship between the institution and its students. *See, e.g., Guckenberger v. Boston University*, 957 F.Supp. 306, 318 (D.Mass.1997). Consequently, where the pleadings or evidence demonstrate some specific, identifiable agreement for an educational institution's provision of particular services to its students and an arguable breach of that specific agreement, the courts of many jurisdictions—apparently either as outside of or an exception to the general public policy bar to "educational malpractice" claims—recognize

presentation of a potentially viable breach of contract claim. *See, e.g., CenCor, Inc. v. Tolman,* 868 P.2d 396 (Colo.1994); *Ross v. Creighton University,* 957 F.2d 410 (7th Cir.(Ill.) 1992); *Squires v. Sierra Nevada Educ. Foundation,* 107 Nev. 902, 823 P.2d 256 (1991).

■ ¶ 16 In the present case, Bittle alleged no *specific* agreement with OCU for the provision of *particular* educational services beyond the provision of an adequate legal education. While Bittle tangentially argues OCU's own internal policies and the accreditation standards for Oklahoma state educational institutions establish a baseline standard of performance below which a breach of contract claim will lie, we discern no intent—either in Art. XIII–A, § 4, of the Oklahoma Constitution [11] or in 70 O.S. §§ 4101, et seq., § 4103 [12] granting to the State Regents of Higher Education authority to regulate and accredit private educational institutions of Oklahoma—to recognize a private right of action for the redress of a private educational institution's alleged substandard performance under the academic accreditation benchmarks of this state. *See, e.g., Walker v. Chouteau Lime Co., Inc.,* 1993 OK 35, ¶¶ 3–7, 849 P.2d 1085, 1086; *Holbert v. Echeverria,* 1987 OK 99, ¶ 7, 744 P.2d 960, 963. *See also, Swidryk,* 493 A.2d at 644.[13]

■ ¶ 17 In this respect, we are persuaded by the overwhelming weight of authority from other jurisdictions that, absent a specific, identifiable agreement for the provision of particular services, the public policy of this state similarly militates against recognition of a claim by a student against a private educational institution arising from the institution's alleged improper or inadequate instruction however denominated—either in tort or contract—for "educational malpractice." Notwithstanding his protestations to the contrary, all of Bittle's claims for fraud, breach of contract, tortious breach of contract, negligence, and unjust enrichment commonly allege a willful or negligent failure of OCU to provide him an adequate legal education as OCU implicitly agreed by admitting him and accepting his payment of tuition, and Bittle has failed to identify or present evidence of any OCU brochure, policy, advertisement or other matter which might reasonably establish a specific agreement for the provision of particular services—beyond the provision of basic education services—as to render OCU's failure in some enumerated particular actionable as a breach of contract. We therefore hold Bittle, in his alternative tort and contract claims, presented neither any recognized legal theory of recovery, nor sufficient facts under any recognized legal theory, and conclude the trial court properly granted judgment to OCU and Board on Bittle's claims of fraud, breach of contract, tortious breach of contract, negligence, and unjust enrichment.

■ ¶ 18 As to Bittle's due process claim, we first note that where state law guarantees a right to a public education upon payment of tuition, a property interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution *may* arise. *Harris v. Blake,* 798 F.2d 419 (10th Cir.1986); *Gaspar v. Bruton,* 513 F.2d 843 (10th Cir.1975). However, "[i]n

---

11. "Private, denominational, and other institutions of higher learning may become co-ordinated with the State System of Higher Education under regulations set forth by the Oklahoma State Regents for Higher Education."

12. "A private educational institution shall be accredited under rules promulgated and adopted by the Oklahoma State Regents for Higher Education unless such institution is accredited by a national or regional accrediting agency which is recognized by the Secretary of the United States Department of Education as a reliable authority as to the quality of education or training offered by institutions of higher education for the purposes of the Higher Education Act of 1965, [20 U.S.C.A. § 1001 et seq] as amended."

13. In rejecting this same argument in a case brought by a medical student expelled for violation of school standards, the Court there said:

As a general rule courts will not interfere with purely academic decisions of a university. (Citation omitted.) The New Jersey courts should not be required to sit in day to day review of the academic decisions of a graduate medical education program. This function is best left to the state board of medical examiners, the board of higher education and the Advisory Graduate Medical Education Council of New Jersey.

the case of disciplinary action by a private educational institution, the federal constitutional requirements of due process normally do not apply, since there is no 'state action.'" Daniel A. Klein, J.D., "Expulsion, Dismissal, Suspension, or Other Discipline of Student of Public School, College, or University as Violating Due Process Clause of Federal Constitution's Fourteenth Amendment—Supreme Court Cases," 88 L.Ed.2d 1015, § 2(b); *Coleman v. Wagner College*, 429 F.2d 1120 (2nd Cir.(N.Y.) 1970) (unless state has undertaken regulation of permissible discipline in particular circumstance at issue, imposition of discipline by private university pursuant to internal procedures not "state action.") The mere fact that a private educational institution may be regulated under state law, or receives direct and indirect federal assistance, does not elevate the acts of the private institution to "state action." *Tynecki v. Tufts University School of Dental Medicine*, 875 F.Supp. 26, 33 (D.Mass.1994).[14]

¶ 19 Moreover, the United States Supreme Court has held that so long as an educational institution affords a dismissed student *some* post-dismissal appellate procedure, the norms of 14th Amendment due process are not offended. *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1977); *Ewing*, 474 U.S. at 225, 106 S.Ct. 507; *Harris*, 798 F.2d at 424. Indeed, the weight of authority suggests that an educational institution need not, in the course of the post-dismissal appellate process, afford the affected student those due process protections ordinarily afforded a party in the course of the civil or criminal adjudicatory process in order to survive due process scrutiny. "Right of student to hearing on charges before suspen-

sion or expulsion from educational institution," 58 A.L.R.2d 903, 907 § 2.[15] Furthermore, at least some jurisdictions recognize that a private college's dismissal of a student for purely academic reasons, unrelated to any other misconduct arguably contrary to school policy, is not subject to judicial review under any circumstance as within the exclusive discretion of the educational institution. *Tedeschi v. Wagner College*, 93 Misc.2d 510, 402 N.Y.S.2d 967, 970 (N.Y.Sup.1978) ("The decision to suspend plaintiff on the basis of her academic performance cannot be disturbed nor reviewed by this Court as it is within the purview and discretion of the school to suspend plaintiff on that ground.") *See also, Swidryk*, 493 A.2d at 644.[16]

¶ 20 In the present case, Bittle does not dispute that his continued enrollment at OCU was conditioned on maintenance of a cumulative grade point average at or above that set by OCU policy. In this respect, neither the allegations of Bittle's petition nor the evidentiary materials offered on summary judgment establish any cognizable "state action" either guaranteeing Bittle an education at OCU, or regulating permissible discipline by OCU, as to invoke constitutional due process protections. Moreover, Bittle admits OCU afforded him post-dismissal administrative review, and during that process, the authorities agree Bittle is not entitled to the full panoply of constitutional due process protections. Bittle therefore forwards no actionable violation of the due process clauses of the Fourteenth Amendment to the United States Constitution or of Art. II, § 7 of the Oklahoma Constitution in the present case.

¶ 21 Nevertheless, some authority suggests that if a student demonstrates both (1) some contractual agreement with the private edu-

**14.** Relying on *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

**15.** "[T]he weight of authority is to the effect that no formal hearing is required, that is, that the hearing need not be conducted with all the formalities of a trial in a court, even where a statute requires a hearing. Under this view it has been held not necessary that formal (written) charges be preferred, that evidence in support of the

charges be introduced at the hearing, that the witnesses be heard under oath, that the student be represented by counsel, that he be confronted with the witnesses against him, that he be permitted the privilege of cross-examination as a matter of right, or that the hearing be governed by the strict rules of evidence." (Footnotes omitted.)

**16.** *See,* footnote 13, *supra* ("As a general rule courts will not interfere with purely academic decisions of a university.")

cational institution delineating a particular administrative procedure for the resolution of disciplinary grievances, and (2) the institution's failure to follow its own procedures, a valid cause of action for breach of the contractually guaranteed procedure may arise. *Klein,* 88 L.Ed.2d 1015, § 2(b), *supra; Boehm v. University of Pennsylvania School of Veterinary Medicine,* 392 Pa.Super. 502, 573 A.2d 575, 579 (1990)[17]; *Corso v. Creighton University,* 731 F.2d 529, 533 (8th Cir.(Neb.) 1982).[18]

¶ 22 In the present case, however, Bittle alleged in his petition only that OCU's internal appellate procedures did not meet constitutional due process muster, and in response to the motions to dismiss/motions for summary judgment, Bittle neither identified, nor offered evidentiary materials arguably demonstrating OCU's breach of any of its administrative post-dismissal appellate procedures. Insofar as Bittle based his due process claims on denial of those procedures ordinarily accorded litigants in a judicial proceeding, we have previously recognized ample authori-

ty for the proposition that a student subject to a private educational institution's disciplinary action is not entitled to the full panoply of constitutional due process safeguards. In view of the public policy considerations counseling against judicial review of a private educational institution's disciplinary decisions generally, and of purely academic disciplinary decisions specifically, we consequently conclude the trial court properly granted judgment to OCU and Board on Bittle's due process claims.

¶ 23 The order of the trial court granting judgment to OCU and Board is therefore AFFIRMED.

¶ 24 ADAMS, J., and BUETTNER, J., concur.

---

**17.** Private school "students who are being disciplined are entitled only to those procedural safeguards which the [private] school specifically provides."

**18.** The Eighth Circuit ruled that where the school's student handbook specifically regarded

expulsion as serious penalty, and granted a student subject to a serious penalty the right to appellate hearing after expulsion, but the school conducted no such hearing, the trial court's order enjoining further action by the school pending hearing should be affirmed.