2002 OK CIV APP 83

Beatrice A. **HURLBUT**, Sole Trustee of the Clyde H. Hurlbut and Beatrice A. Hurlbut Living Trust, Plaintiff/Appellee,

and

Ronald Lee Hurlbut, Burma Fay Andrews, and Clyde Jundur Hurlbut, Plaintiffs,

v.

Robert C. **MORROW**, Defendant/Appellant.

No. 96,599.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 9, 2002.

Paul Streck, Edmond, OK, for Plaintiff/Appellant.

Joe W. Davis, James H. Rice, Midwest City, OK, for Defendant/Appellee.

Larry L. Oliver, Tulsa, OK, For Defendant/Appellant.

Kenneth M. Smith, Robert P. Skeith, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, OK, for Plaintiff/Appellee.

Opinion by CAROL M. HANSEN, Presiding Judge.

¶ 1 In this action contesting the terms and legal efficacy of a "Hunting Lease", Appellant, Robert Morrow (Morrow), appeals from [1] the trial court's judgment ordering the agreement cancelled, and [2] the trial court's denial of Morrow's post-trial Request for Stay of Enforcement of Judgment. We find no error in either determination and affirm.

## BACKGROUND FACTS

¶ 2 On July 16, 1990, Morrow, as lessee, entered into an agreement entitled, "Hunting Lease", with Clyde and Beatrice Hurlbut (Hurlbuts). Essentially, the agreement provided Morrow would construct a gate valued at $10,562.32 on Hurlbuts' property in consideration for a twenty five year "hunting lease" on approximately 1055 acres. The agreement was filed of record in October 1990.

¶ 3 In December 1992, Hurlbuts, who at the time were both eighty-two, conveyed their property to The Clyde and Beatrice Hurlbut Living Trust (the Trust), with themselves as trustees. In November 1997, Clyde Hurlbut died, leaving Appellee, Beatrice Hurlbut (Trustee), as the sole trustee. After Clyde Hurlbut's death, Trustee decided to

sell the "Hunting Lease" property owned by the Trust, but allegedly the existence of the lease agreement with Morrow made the property largely unmarketable. Trustee attempted to obtain Morrow's release of the agreement, and when no release could be agreed, Trustee filed this action.

## STATEMENT OF THE CASE

¶ 4 In her Petition, Trustee alleged that at the time the agreement was signed, Morrow orally agreed he would, upon payment by Hurlbuts of the "unamortized cost of the gate", release the agreement if Hurlbuts decided to sell the property. The Petition further alleged that when the Trust sought to revoke Morrow's rights under the agreement, he demanded payment "far in excess of the unamortized cost of the gate." The Trust asserted claims for [a] rescission of the agreement, [b] declaratory judgment the agreement was subject to revocation, and [c] slander of title.[1]

¶ 5 In his Answer, Morrow denied, among other things, any agreement to release the "Hunting Lease" in the event Hurlbuts decided to sell the property. Morrow later filed a Counterclaim, alleging fraud in the inducement, conspiracy to defraud and breach of contract. Each of Morrow's claims were based on 260 acres purported to be included in the 1,055 acres covered by the agreement, but which had been previously conveyed to the three non-trustee plaintiffs (the Hurlbut heirs). The trial court granted Trustee's motion to strike the counterclaim, finding various supporting grounds.

¶ 6 The Pretrial Conference Order listed fraud in the inducement and slander of title as the Trust's remaining grounds for recovery. Quiet title, declaration of rescission, damages, and judgment terminating the "Hunting Lease" were listed as relief sought. The order required the parties to provide the court with questions to the jury "as to its

recommendations for resolution of the equitable issues."

¶ 7 At trial, the trial court allowed Trustee to amend her equitable claim to conform to the proof. The jury was instructed only on the legal issues of fraud and slander of title, and was not presented with equitable questions. The jury returned a verdict for Morrow, specifically finding he had not fraudulently induced Hurlbuts to sign the "Hunting Lease". The judgment on the jury verdict for Morrow is not at issue here.

¶ 8 After the jury was dismissed, the trial court ordered a hearing for argument on "the equitable considerations in the case." At this subsequent hearing, the trial court also heard evidence on the value of the "Hunting Lease". Pursuant to Morrow's request, the trial court, considering evidence from the trial and the later hearing, entered findings of fact and conclusions of law as to the equitable issues.

¶ 9 The trial court's findings and conclusions were later incorporated into its judgment cancelling the "Hunting Lease" upon Trustee paying Morrow $28,500.00 as compensation. The trial court's judgment further denied Morrow's motion to enter judgment on the jury verdict "to the extent that said motion attempts to deprive this Court of its equitable jurisdiction to cancel the hunting lease." Morrow appealed from this judgment.

¶ 10 A few weeks after Morrow filed his Petition in Error, Trustee moved in the trial court to require Morrow to execute a release of the "Hunting Lease" or post a supersedeas bond. In response, Morrow moved to stay enforcement of the judgment. The trial court found the judgment was not stayed because of Morrow's failure to post a supersedeas bond and decreed the lease cancelled. Morrow filed a Supplemental Petition in Error to appeal this latter trial court order.

---

1. Plaintiffs Ronald Hurlbut, Burma Fay Andrews and Clyde Jundur Hurlbut (Hurlbut heirs) requested quiet title to property purportedly included in the "Hunting Lease", but which had been deeded to them before the agreement was signed. The trial court granted summary judg-

ment for the Hurlbut heirs on that issue and Morrow did not appeal. Morrow also did not appeal from the trial court's denial of his motion to vacate the summary judgment. The Hurlbut heirs are not parties here.

## STRIKING OF MORROW'S COUNTER-CLAIM

¶ 11 Here on appeal Morrow contends the trial court erred in refusing to allow him to file his pretrial counterclaim. He asserts he "sought to amend his answer to add a counterclaim against [Trustee] to address its misrepresentation .. as to its non-ownership of the property that was actually owned by [the Hurlbut heirs]."

¶ 12 Allowing amendment of pleadings is within the discretion of the trial court, and we will not overturn its decision unless shown that discretion was abused. *Bittle v. Oklahoma City University*, 2000 OK CIV APP 66, 6 P.3d 509, quoting from *Prough v. Edinger* 1993 OK 130, 862 P.2d 71. The trial court's discretion regarding amendment is limited by 12 O.S. Supp.2000 § 2015(A), which provides that leave to amend "shall be freely given when justice so requires." *Id.*, at 513. There is no abuse if the trial court relies on a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, . . ., undue prejudice to the opposing party . . .". *Id.*

¶ 13 Morrow's Answer was filed on January 25, 1999. In the Answer he specifically addressed and denied the Hurlbut heirs' quiet title claim based on their ownership of the 260 acres. Morrow's Counterclaim was filed on June 7, 1999, without leave of court or written consent of the adverse parties as required by § 2015(A). The counterclaim, as initially filed, was thus a nullity. *Hunter v. Echols*, 1991 OK 114, 820 P.2d 450. Morrow did belatedly seek leave of court to file his counterclaim in his June 24, 1999, response to the Plaintiffs' motion to strike the counterclaim.

¶ 14 In granting the motion to strike, the trial court found the counterclaim was [a] filed without leave of court or written consent of plaintiffs, [b] filed after the deadline for amendment of pleadings as provided in the court's scheduling order, and [c] unduly delayed in that Morrow was aware, or should have been aware, of the Hurlbut heirs' claim at the time of filing his Answer. The trial court further found the counterclaim would result in undue prejudice to plaintiffs.

¶ 15 The facts essential to Morrow's counterclaim were evident, at the latest, in the Petition initiating this action. In fact, the record reflects that even prior to litigation the Hurlbut heirs made a written request on Morrow to release any rights to their 260 acres. Morrow's Answer was not filed until approximately seven weeks after the Petition. We find nothing to suggest Morrow was in any way prevented from filing a timely counterclaim within the constraints of § 2015(A). Morrow offers no plausible explanation as to why he could not have done so.

¶ 16 Further, the court's Scheduling Order, filed April 23, 1999, and agreed to by Morrow, provided that no amendments to pleadings could be filed after May 10, 1999. The Court of Civil Appeals has held it was not an abuse of the trial court's discretion to deny an application to amend a pleading for failure to comply with a pretrial scheduling order. *Phillips v. Oklahoma Farmers Union Mut. Ins. Co.*, 1993 OK CIV APP 199, 867 P.2d 1361.

¶ 17 Additionally, all parties had been deposed prior to Morrow's counterclaim. Allowing Morrow's new claims of fraud, conspiracy and breach of contract would have necessitated the added expense of repeating depositions and would have caused delay in bringing the action to trial. The trial court's findings and conclusion in striking the counterclaim are supported by the record. Balancing undue delay and prejudice to Trustee against the needs of justice under § 2015(A), we find no abuse of the trial court's discretion in not allowing Morrow's pretrial counterclaim. *Bittle*, 6 P.3d at 513.

## ALLEGED ERROR IN ALLOWING TRUSTEE TO AMEND HER CLAIMS

¶ 18 Morrow also contends the trial court erred in allowing Trustee to amend her pleading to add a claim for reformation during the trial. This contention is without merit because Morrow did not object to Trustee's request to amend the pleadings to conform to the evidence. By failing to object to amendment of pleadings to conform to the evidence,

Morrow, by implication, consented to trial of those issues added by the amendment. *See,* 12 O.S. Supp.2000 § 2015(B).

¶ 19 Also, by failing to object in the trial court, Morrow waived his right to raise the question here on appeal. Having not called the alleged error to the trial court's attention, Morrow may not raise it for the first time before this Court. *Wilson v. Still,* 1991 OK 108, 819 P.2d 714. We note that while Morrow complains of Trustee's amending to add a claim of reformation, he neglects to mention Trustee also received leave of court during trial to add a claim for equitable cancellation, and that is the basis upon which the trial court made its equitable judgment. Morrow failed to enter a timely objection to either claim being added.

## USE OF "ADVISORY" JURY–LEGAL AND EQUITABLE ISSUES

¶ 20 Morrow asserts the trial court also erred "in ignoring the jury's verdict that was never considered as 'advisory' . . . until after the jury returned its unanimous verdict for defendant." Morrow argues the Pretrial Conference Order supports this contention. We do not agree. As we noted above, the Pretrial Conference Order clearly calls for the parties to provide the court with "sample questions to the jury as to its *recommendations* for resolution of the equitable issues." (Emphasis added).

¶ 21 The order also states that all parties request findings of facts and conclusions of law on all "*equitable* issues." (Emphasis added). The Pretrial Conference Order plainly put Morrow on notice that both legal and equitable issues would be determined at trial and that the jury might be called on to provide "recommendations" to resolve the equitable issues.

¶ 22 For reasons not clear from the record, no questions were put to the jury in an advisory capacity. The jury was instructed on legal issues only, and, with respect to those issues, did not act in an advisory capacity. The trial court's reference to the "advisory jury" in its order and incorporated findings and conclusions is inaccurate, but of no

material consequence to the outcome of the case.

¶ 23 Similarly, the trial court's determination not to put equitable questions to the jury for their recommendation was not material to the outcome. Even where an advisory jury is utilized in an equitable action, the trial court is not relieved of its independent duty to make its own determination on issues of fact and law. *Butcher v. McGinn,* 1985 OK 58, 706 P.2d 878. Because trial by jury is not a matter of right in equitable cases, use of an advisory jury is within the discretion of the trial court. *See, Butcher,* at 880. Conversely, it was not error for the trial court to reserve the equitable issues for its independent determination.

¶ 24 We reiterate, as noted above with respect to Morrow's contention of error in allowing Trustee to amend her pleadings, Morrow failed to object to Trustee's request to add a claim for *equitable* cancellation of the "Hunting Lease". Morrow thus implicitly consented to trial in equity on this issue, independent of the legal issues, and under *Butcher* the trial court was not bound by any jury determination in its disposition of the equitable cancellation question.

## EQUITABLE CANCELLATION OF THE "HUNTING LEASE"

¶ 25 Morrow further contends the trial court erred in granting equitable relief to Trustee to reform or cancel the "Hunting Lease" in the absence of mutual mistake, fraud or inequitable conduct. We have concluded the dispositive issue of equitable cancellation was correctly before the trial court for its determination independently of the legal issues decided by the jury.

¶ 26 A court sitting in equity has broad and plenary powers to fashion remedies suitable for the particular facts and circumstances of the case. *Malnar v. Whitfield,* 1989 OK CIV APP 28, 774 P.2d 1075. The court may "adapt its relief and mold its decisions to satisfy the requirements of the case to protect and conserve the entities of the parties." *Id.* The findings and determination of a court in equity will not be reversed unless clearly against the weight of

the evidence. *McClain v. Ricks Exploration Co.*, 1994 OK CIV APP 76, 894 P.2d 422.

¶ 27 Contrary to Morrow's assertion, there is evidence of inequitable conduct on his part in dealings with owners of tracts within the leased area and with a potential buyer. The "Hunting Lease" explicitly provides the lessee "will not do anything to harm or destroy the owners land." Implicit in such a provision is a prohibition on acting so as to destroy Trustee's use of that land as the owner in fee simple, including the ability to dispose of the land in the manner deemed most beneficial to her. Also, under common law, contracts carry an implicit and mutual covenant to act toward each other in good faith. *Roberson v. PaineWebber*, 1999 OK CIV APP 17, 998 P.2d 193. Even outside the agreement there is a duty to abstain from infringing upon the property rights of others. 76 O.S. Supp.2000 § 1.

¶ 28 The testimony of one potential purchaser was that Morrow told her if they purchased a 61 acre tract covered by the lease her husband could not hunt on that property, but that Morrow could hunt on the property, could go through any gate, locked or not, and could "camp in my backyard if he wanted to." He refused to release just the 61 acres from the "Hunting Lease", asking the prospective purchaser to instead pay for the release of a 191 acre tract. When the prospective purchaser called back a few hours later to attempt to convince Morrow to release just the 61 acres, Morrow approximately doubled the asking price for the 191 acres. The prospective purchaser determined not to buy Trustee's land. Morrow similarly told an owner who had purchased a 40 acre tract and built a house on it that under the "Hunting Lease" he could plow up the owner's front yard and plant deer food on it if he wanted to.

¶ 29 While the "Hunting Lease" gave Morrow some authority over use of Trustee's property for hunting, there is evidence he exercised that authority in such a way as to inhibit the marketability of the property, and thus attempt to preserve his own use of the property at the expense of Trustee's right to dispose of the property as she determined appropriate.

¶ 30 Morrow's actions in violation of his duties to act in good faith and not infringe upon Trustee's property rights would be sufficient to support equitable cancellation of the "Hunting Lease", but the trial court found the significant change in character of the property an equally compelling reason to cancel the lease. The trial court cites *Kansas, Oklahoma & Gulf Railway Co. v. Grand Lake Grain Company*, 1967 OK 170, 434 P.2d 153, in its conclusions of law supporting this determination.

¶ 31 In *Grand Lake Grain*, there was 22 years remaining on a 27 year lease agreement giving the grain company right to use the railroad's right of way to build its facility, which was to use the railroad to ship its freight. For unrelated economic reasons the railroad ceased operations and the grain company sued for losses over the remainder of the lease. The Supreme Court held:

> When parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose, and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance and without default of either party the particular thing ceases to exist and be available for the purpose, the contact shall be dissolved and the parties excused from performing it.

*Grand Lake Grain*, 434 P.2d at 158 (Quoting from *Tulsa Opera House Co. v. Mitchell*, 1933 OK 469, 24 P.2d 997.)

¶ 32 The evidence established that conditions first contemplated by the parties for use of the property in controversy no longer exist. At the time the "Hunting Lease" was executed the property was undeveloped and used essentially as a "cow ranch" and for hunting. Morrow testified he "took it for granted" those uses would continue when the Hurlbuts decided to sell the property because Clyde Hurlbut had talked about the uses. Morrow said continued use as a "cow ranch" had not been promised, and if it had, he would have put it in the agreement. Morrow acknowledged Trustee had a right to sell

the property and conceded he "really didn't even think about" the property being subdivided and sold for residential use.

¶ 33 Morrow acknowledged this change in character of the property when he described it as a "housing development." He testified on direct examination that Trustee was "going to have it broke up where it's ruined, they done ruined it", answering negatively to his counsel's query whether he wanted to retain the lease. Responding to whether he was asking the court to award him damages for having to replace the lease, Morrow stated "they're breaking it up into a housing project and they're eventually going to, you know, you don't, can't hardly hunt in somebody's yard and you don't do that so, yes, I guess you're right."

¶ 34 Morrow further responded on cross-examination concerning the lease that he knew he was "going to have to give it up, I understand." Not only does Morrow's testimony support the trial court's equitable determination, but by his testimony Morrow effectively acquiesced in, if not invited, the trial court's judgment cancelling the lease. For this reason alone he should not now be heard to complain about that judgment. *Keeney v. TTC Illinois, Inc.,* 2002 OK CIV APP 48, 46 P.3d 192.

¶ 35 The evidence, and most compellingly, the testimony of Morrow himself, established changes in the character of the use of the property such that Morrow's continued utilization of the "Hunting Lease" was no longer practicable. The existence of the lease, and Morrow's conduct, at the least inhibited Trustee's ability to sell the property and thus infringed on her property rights. The trial court, using its equitable powers, molded its decision to protect and conserve the entities of the parties. *Malnar v. Whitfield,* 774 P.2d at 1079. The decision to cancel the lease and compensate Morrow with damages was not against the clear weight of the evidence. *Id.*

### THE TRIAL COURT'S VALUATION OF THE "HUNTING LEASE"

¶ 36 Alternatively, Morrow contends that when the trial court decided to cancel the lease it erred in its valuation of the remaining years of the lease. Morrow attempts to support this contention with the testimony of his purported expert witness. However, the transcript of the hearing at which that witness' testimony was given contains only the testimony of Trustee's expert appraisal witness. Morrow notes this omission in his Brief in Chief, but failed to have the omitted testimony made part of the appellate record. Therefore, the only expert evidence in the record is that of Trustee's witness. It was Morrow's duty, as appellant, to ensure the appellate record contained all materials necessary for the corrective relief he requests. *Pryor v. Mid–West Investigations & Process Serving, Inc.,* 2000 OK CIV APP 22, 999 P.2d 452.

¶ 37 The record shows Trustee's expert was a certified experienced appraiser, but had not appraised a hunting lease before. His extensive testimony revealed he had inspected several other properties with hunting leases in the same general area of the state as the property in controversy. He assigned a value to the "Hunting Lease" in this case by using these comparable leases and the nature of the portions of land making up the lease property.

¶ 38 Trustee's expert testified he calculated the value of Morrow's leasehold estate as the present value of the estimated rental income stream over the projected remaining 15 years of the lease. He determined the present value by applying a "discount rate" which he explained in detail, and to which Morrow did not object. He calculated the present value of the future income stream to be $22,800.00.

¶ 39 The only evidence of record that Morrow offers in support of lease valuation was the testimony of a prospective purchaser of 600 acres of the property. That witness testified he offered $800.00 per acre and that he wanted the property for hunting. Morrow argues the $800.00 offer was "substantially more" than the property was worth "without its hunting value." This is, however, a mere assertion by Morrow because he fails to direct us to other evidence of record to establish that hunting quality increased the property's value. This Court may not utilize unsupported statements made in the

brief of a party as a basis for an appellate decision. *Smith v. Smith,* 1978 OK CIV APP 20, 579 P.2d 841. Considering the record before us, we find the trial court's valuation of Morrow's lease at $28,500.00 is not clearly against the weight of the evidence. *Malnar v. Whitfield,* 774 P.2d at 1079.

## WEIGHT GIVEN TO EXPERT TESTIMONY

■ ¶ 40 In determining the reliability of the expert testimony, the trial court noted it applied the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Morrow maintains this was error in that the Oklahoma Supreme Court has not adopted that case as applicable to Oklahoma. To the degree it might be applicable, Morrow asserts Trustee's expert does not meet the *Daubert* standards. He argues, as between the experts, his expert "represented and presented a much more valid and reliable background of knowledge and information than was presented by [Trustee's] expert."

¶ 41 As to the latter argument, we have no means to determine whose expert might be the more reliable because Morrow has failed to cause his expert's testimony to be included in the appellate record. *Pryor v. Mid–West Investigations & Process Serving, Inc.,* 999 P.2d at 454. The question remains as to what standards the trial court could properly apply to the testimony of Trustee's expert appraiser.

¶ 42 Expert testimony in Oklahoma is authorized under 12 O.S. Supp.2000 § 2702. Section 2702 is the same as Rule 702, Federal Rules of Evidence. *See,* Evidence Subcommittee's Note to § 2702. The Oklahoma Supreme Court has long looked to the federal courts' interpretations for instruction where it is construing Oklahoma's rules which are the same as, or substantially the same as, the Federal Rules of Evidence. *See, e.g. Willoughby v. City of Oklahoma City,* 1985 OK 64, 706 P.2d 883; *Sharp v. 251 st Street Landfill, Inc.,* 1996 OK 109, 925 P.2d 546.[2]

¶ 43 There are therefore no general constraints on the trial court looking to *Daubert* for guidance in determining the admissibility of, and weight to be given, Trustee's expert appraiser. More specifically, in *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court held that *Daubert's* general principles apply to all expert matters described in Federal Rule 702, that is, "scientific, technical or other specialized knowledge."

¶ 44 Morrow's bare assertion that Trustee's expert does not meet the *Daubert* standards is unsupported by any reference to evidence showing deficiency in expertise. The fact that Trustee's expert had never appraised a hunting lease before does not in itself disqualify the expert. In *Cartwright v. Atlas Chemical Industries, Inc.,* 1978 OK CIV APP 23, 593 P.2d 104, the Court held that packing engineers, qualified in custom packing, could give opinions on packing of blasting caps notwithstanding that neither had packaged explosives.

¶ 45 Trustee's expert was a certified appraiser experienced in valuing a variety of properties, including agricultural properties which were burdened with hunting leases. Qualification of expert witnesses is within the sound discretion of the trial court, and, finding no abuse of that discretion, we will not disturb that qualification here. *Williams Natural Gas Co. v. Perkins,* 1997 OK 72, 952 P.2d 483.

## DENIAL OF MOTION TO STAY ENFORCEMENT OF JUDGMENT

■ ¶ 46 Consideration of the post-trial proceedings is helpful in understanding the rationale for the trial court's determination not to stay enforcement. Several weeks after Morrow filed his Petition in Error, Trustee moved in the trial court to require Morrow to release the "Hunting Lease" or post a supersedeas bond. Trustee alleged she had tendered the $28,500.00 judgment to Morrow

---

2. The Oklahoma Court of Criminal Appeals has expressly adopted the *Daubert* test for determining whether novel scientific evidence may be admitted through expert testimony. *Taylor v. State,* 889 P.2d 319 (1995 Okla. Cr.).

and asked him to execute a release but he had refused.

¶ 47 Trustee maintained Morrow had failed to move to stay enforcement of the judgment within 10 days, thus the judgment was fully enforceable. Morrow had nonetheless filed his appeal without posting a bond or other security. Trustee alleged she would be prejudiced if the lease were not released, or a bond posted, because [a] the $28,500.00 judgment was to compensate for the full 15 years remaining on the "Hunting Lease" and [b] marketability of the property would remain impaired pending appeal and result in lost interest income from lost sales proceeds.

¶ 48 Morrow responded to Trustee's motion with a request for stay of enforcement of judgment. Morrow proposed to tender the release of the "Hunting Lease" to the court to be delivered to Trustee upon affirmation of judgment by the Supreme Court and payment of the $28,500.00. He would also suspend his hunting rights during the appeal. Morrow asserted he was financially unable to post the $37,750.00 bond proposed by Trustee.

¶ 49 On October 11, 2001 the trial court filed its order directing Morrow to post a supersedeas bond in the amount of $22,000.00 within 10 days. The order stayed Trustee's judgment, but provided that if Morrow did not file the bond within 10 days that stay would terminate. On October 22, 2001, Morrow, rather than post the ordered bond, delivered a quit-claim deed for his hunting interests to the court with the proviso that it be delivered to Trustee only upon affirmation of judgment by the Supreme Court and Trustee's payment of $28,500.00. On that same day he filed a motion to reconsider the trial court's order directing him to file the supersedeas bond. In sum, Morrow argued the order to post the supersedeas bond had no rational basis, and he reiterated that he was financially unable to post the bond.

¶ 50 In her November 2, 2001 response to Morrow's motion to reconsider, Trustee argued he had presented nothing new except a "conclusory Affidavit" in which Morrow merely stated he had other "financial concerns" and had obligated himself for attorney fees. Trustee further argued the conditional

quit-claim deed would do nothing to remove the cloud on her title to the property and that the prospect for monetary loss remained the same. Trustee filed an affidavit detailing those potential losses.

¶ 51 On November 2, 2001, Trustee also tendered $28,500.00 into court and moved, in view of Morrow's refusal to post bond as ordered, to have the trial court order the "Hunting Lease" cancelled. Acting on Trustee's November 2nd motion, the court ordered Trustee be allowed to pay the $28,500.00 judgment into court and the "Hunting Lease" be deemed cancelled. The order provided the release of the "Hunting Lease" would not prejudice Morrow's right to continue his appeal if he did not withdraw the $28,500.00. It is from this order that Morrow filed his Supplemental Petition in Error.

¶ 52 A stay of enforcement of a judgment while an appeal is pending may be obtained under the authority of 12 O.S. Supp.2000 § 990.4. The person seeking the stay must [1]file with the court clerk a written undertaking to satisfy the judgment and pay the costs and interest on appeal if the judgment is affirmed, and [2] post a supersedeas bond or other security as provided in § 990.4. The stay is effective when the bond and sufficiency of the sureties are approved by the court or the security deposited with the court clerk.

¶ 53 Section § 990.4(B)(4) provides that where, as in this case, the judgment directs the delivery of documents:

> ..., they may be placed in the custody of the clerk of the court ... for safekeeping during the pendency of the stay, as directed by the court in writing, *or* the bond shall be in such sum as may be prescribed by the court. (Emphasis added).

¶ 54 Under § 990.4, Morrow was entitled to a stay of enforcement of the judgment ordering cancellation of the "Hunting Lease" only if tendering his quit claim deed was directed by the trial court in writing. The trial court instead, as is authorized in § 990.4, directed him to post a bond. In its discretion, the trial court allowed the stay conditioned upon a bond prescribed for pro-

tection of the parties pending appeal. *See, Mapco, Inc. v. Means,* 1975 OK 109, 538 P.2d 593.

¶ 55 In setting the bond, the trial court had the benefit of full briefing and argument by the parties, and as the trial judge was fully aware of the facts and equities of the case. Morrow's tender of the quit claim deed and offered suspension of his hunting privileges would have essentially maintained the status quo and would have done nothing to protect Trustee against prospective loss. The record contains only Morrow's bare assertion that he was not financially able to post the bond. We find nothing in the record, either as a matter of fact or law, to convince us the trial court abused its discretion in requiring and setting the amount of the bond pending appeal.

¶ 56 When Morrow failed to comply with the trial court's order directing him to post the bond, the trial court properly lifted the stay of enforcement and ordered the lease cancelled according to its judgment. In the absence of a stay of enforcement Trustee was free to seek execution of that judgment. *See, Depuy v. Hoeme,* 1989 OK 42, 775 P.2d 1339, 1347 (note 32). The trial court specifically preserved Morrow's right to continue his appeal on the issue of valuation of his lease rights. Particularly since Morrow, at least by implication, conceded the futility of continuing the lease relationship in view of the change in character of the property, we find no reversible harm resulting from the trial court's post-trial order.

¶ 57 The trial court's judgment of June 22, 2001, and its order of November 26, 2001, are accordingly AFFIRMED.

MITCHELL, J., concurs.

ADAMS, J., concurs in result.