2011 OK CIV APP 42

**ATKINSON, HASKINS, NELLIS, HOLE-MAN, PHIPPS, BRITTINGHAM & GLADD, an Oklahoma Professional Corporation, Plaintiff/Appellee,**

v.

**VECTOR SECURITIES, INC., an Oklahoma corporation; Vector Properties, Inc.; and James W. Dill, Defendants/Appellants.**

No. 107,734.

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 27, 2011.

Certiorari Denied March 28, 2011.

---

Galen L. Brittingham, Michael A. Simpson, Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, Oklahoma, for Plaintiff/Appellee.

Mark A. Craige, Morrel Saffa Craige, P.C., Tulsa, Oklahoma, for Defendants/Appellants.

## OPINION ON REHEARING

DOUG GABBARD II, Vice Chief Judge.

¶1 Defendants, Vector Securities, Inc. (VecSec), Vector Properties, Inc. (VecProp), and James W. Dill (Dill), appeal the trial court's grant of summary judgment in favor of Plaintiff, Atkinson, Haskins, Nellis, Holeman, Phipps, Brittingham & Gladd, based on Plaintiff's assertion of offensive nonmutual collateral estoppel to establish that Defendants are alter egos of one another. We initially dismissed the appeal for untimely filing, but have granted rehearing in order to consider the case on its merits. On rehearing, we withdraw our previous opinion, substitute this one, and affirm the trial court's judgment.

## FACTS

¶2 In November 2002, Plaintiff, a Tulsa law firm, obtained a judgment against *Vec-*

*Prop* for $17,166.91, for breach of an agreement for legal services. It is undisputed that the judgment is final, and that Plaintiff has received less than $2,000 in payment. Plaintiff filed its original petition in this action in April 2004, naming *VecSec* as the only defendant, asserting that VecProp had fraudulently transferred assets to VecSec, and that such transfers were avoidable under Oklahoma's Uniform Fraudulent Transfer Act, 24 O.S.2001 § 112 et seq. (UFTA). Plaintiff sought judgment against VecSec for the uncollected part of its judgment, attachment of the assets, and an injunction against further transfers. VecSec's answer admitted Plaintiff's judgment existed, but denied knowing whether the judgment remained unpaid. VecSec also denied the assets had been transferred in violation of UFTA.

¶3 In August 2006, Plaintiff amended its petition, adding VecProp and Dill as Defendants. The amended petition also added a third claim, "alter ego," alleging that all Defendants were alter egos of each other and that Dill formed VecSec in 1980, but it remained inactive until sometime after Plaintiff's 2002 judgment against VecProp. Plaintiff further claimed Dill "effectively resurrected the previously-dormant" VecSec, transferred VecProp's business to VecSec, and began conducting VecProp's business through VecSec; that VecSec and VecProp were mere instrumentalities of Dill and had been abused by him in order to avoid paying Plaintiff's judgment and ensure a continued stream of personal income to himself; and that Dill and VecSec should also be deemed liable to Plaintiff on the judgment against VecProp.

¶4 Defendants answered the amended petition, denying liability and asserting, among other allegations, that the alter ego claim added by Plaintiff was "identical to the claims asserted" against Defendants in another case, *Kingham v. Vector Properties, Inc., et al.,* Tulsa County Case No. CJ–2005–03237 ("the Kingham Suit"). Defendants asserted the Kingham Suit was tried in June 2006 in a two-day, non-jury trial **"on the exact same factual and legal issues as the Plaintiff now seeks to add to this case;"** that Plaintiff's counsel had entered an appearance in the Kingham Suit; and that "Plaintiff could have, and should have sought to consolidate this case with the Kingham Suit for trial and saved the parties thousands of dollars in fees, but failed to do so." (Emphasis added).

¶5 In July 2008, Plaintiff moved for summary judgment on its "alter ego" claim, asserting the doctrine of collateral estoppel, or issue preclusion. Attached to Plaintiff's motion was a 29–page judgment entered in the Kingham Suit, making extensive factual findings concerning the alter ego theory asserted by Kingham against Dill, VecProp, and VecSec in that case.

¶6 The Kingham Suit judgment determined that Kingham had obtained a judgment against VecProp in 2002; that the judgment had not been satisfied; and that, shortly after Kingham's judgment was entered, Dill "discontinued doing business" as VecProp and "reanimated the long dormant Vector Securities" in order to carry on VecProp's business. The judgment listed numerous preferential transfers and other conduct illustrating abuses of VecProp and VecSec's assets and corporate structure by Dill, who the court identified as "the defacto and unlimited control person" of VecProp and various other "shell" companies.[1] The

1. Among its many factual and legal findings, the court in the Kingham Suit specifically found that "Vector [Properties], Vector *Securities,* Mr. Dill and [various related shell companies] were operated as one sole proprietorship, the purpose of which was to maximize financial benefits to Mr. Dill, while simultaneously avoiding the debt he had caused Vector [Properties] to incur to Mr. Kingham;" that Dill had "transferred Vector [Properties] assets to himself and the [shell companies];" that Dill "is Vector [Properties'] controlling shareholder, holding ninety percent of the shares issued thereby," and "[w]hile he is a minority shareholder of Vector *Securities,* his wife, Brenda G. Dill ... owns the majority of shares issued thereby;" that Dill "controlled and controls both Vectors on a defacto basis;" that "[b]oth the resuscitated Vector *Securities* and abandoned Vector [Properties] are involved in the same business of leasing, management, development and brokerage of commercial real estate;" that "Vector [Properties] was terminated in Oklahoma due to a Judgment obtained by a law firm" against it; that "[t]he business model employed by Mr. Dill for himself, Vector [Properties], Vector *Securities* and [the shell companies] mandates a conclusion that all of them are alter

judgment concluded that, taking into consideration the factors delineated in *Frazier v. Bryan Memorial Hospital Authority*, 1989 OK 73, ¶ 16, 775 P.2d 281, 288, and focusing on the "degree of control exercised by" Dill, the three defendants "all acted as one sole proprietorship with regard to their insiders and their creditors," and that they "are alter egos of each other."

¶ 7 Defendants appealed the Kingham Suit judgment, but later voluntarily dismissed the appeal. In the trial court, they admitted the judgment in the Kingham Suit was final, but objected to Plaintiff's reliance on it as conclusive of the alter ego issue in the instant case. Nevertheless, the trial court granted Plaintiff's motion for summary judgment, finding Defendants were "collaterally estopped" from relitigating alter ego in the current case, and that VecSec and Dill were liable to Plaintiff for the judgment against VecProp. Defendants lodged this appeal.[2]

## STANDARD OF REVIEW

¶ 8 Under the doctrine of offensive nonmutual collateral estoppel, a plaintiff seeks "to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). Whether a case meets the criteria to make offensive nonmutual collateral estoppel *available* for use by a court is subject to *de novo* review. *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶¶ 12 and 14, 980 P.2d 116, 124–25. However, a trial court's application of the earlier decision—i.e., its determination of whether the defendant "had a full and fair opportunity to litigate the issue in the earlier proceeding"—is reviewed for abuse of discretion. *Id.* at ¶ 15, 980 P.2d at 125. (Emphasis omitted). Thus, "while the doctrine's *availability* is reviewed *de novo*, the trial court's *application* of the doctrine will be considered under the deferential abuse-of-discretion standard." *Id.* at ¶ 12, 980 P.2d at 124.

¶ 9 Summary judgment always involves a determination of whether a factual dispute exists, and presents an issue of law. "[A] judicial determination that no material evidence exists in the trial court record to support a claim or defense is a determination of an issue of law that is reviewed *de novo*." *Christian v. Gray*, 2003 OK 10, n. 21, 65 P.3d 591, 609 (citing *Barker v. State Ins. Fund*, 2001 OK 94, ¶ 7, 40 P.3d 463, 466). *Christian* notes that *Barker* also explains that a trial court's determination based upon no disputed facts is reviewed using a *de novo* standard. *Id.*

## ANALYSIS

¶ 10 The Oklahoma Supreme Court first recognized offensive nonmutual collateral estoppel in *Lee v. Knight*, 1989 OK 50, 771 P.2d 1003, when it allowed a plaintiff in a civil tort case to use a defendant's criminal conviction to establish the defendant's liability. Adopting the viewpoint of the *Restatement (Second) of Judgments*, the Court held that the

---

egos of each other;" that Dill's "own testimony conclusively establishes that he, Vector [Properties] and Vector *Securities* are one and the same;" and that [t]hese businesses use almost identical names, are both real estate related, are conducted by the same principals, have the same employees, are conducted out of the same office, and involve the investment and acquisition of commercial properties."

2. Plaintiff's initial motion was filed in July 2008 and was styled as a motion for "partial summary judgment." The trial court granted the motion. Defendants' attempted appeal from that order, in Case No. 106,632, was dismissed on the Supreme Court's own motion in February 2009 for lack of an appealable order. In its dismissal order, the Court instructed that Defendants would have the opportunity to seek review of the November 2008 order "in a timely and properly brought appeal" from disposition of Plaintiff's remaining alternate theories of recovery. In October 2009, Plaintiff voluntarily dismissed its alternate theories of recovery, and the trial court entered an order specifying that the November 2008 judgment became final as of October 8, 2009. This appeal was filed on November 10, 2009. On May 20, 2010, we issued an opinion dismissing the appeal as untimely because the petition in error was not filed in compliance with 12 O.S. Supp.2009 § 990A (B) and Supreme Court Rule 1.4(c), and it appeared that this Court lacked jurisdiction. Defendants thereafter filed a petition for rehearing that included evidence attesting that the petition in error was timely filed. We then granted rehearing and agreed to consider the appeal on its merits.

conviction should be given "fully conclusive" effect to establish factual issues as to the defendant's conduct which were "actually determined" in the prior proceeding. *Lee* at ¶¶ 8 and 11, 771 P.2d at 1005 & 1006.

¶ 11 Ten years later, in *Cities Service Co. v. Gulf Oil Corp.*, the Court held that nonmutual collateral estoppel could be used offensively to preclude a defendant from relitigating defenses that had been rejected in an earlier federal class action and in an arbitration proceeding. The Court listed the criteria which an appeals court must analyze *de novo* to determine whether the doctrine is available in a particular matter:

> Employment of this form of collateral estoppel requires: (1) the precluded issue be the same as that involved in the earlier action; (2) the issue was actually litigated; (3) it was determined by a final and valid decision; and (4) the determination was essential and necessary to the earlier result.

*Id.* at ¶ 14, 980 P.2d at 125.

██ ¶ 12 As noted above, Defendants' answer to Plaintiff's amended petition admitted that the issues involved in both cases were identical in all material respects. Defendants also admitted that the Kingham Suit judgment was final, and did not dispute the terms or validity of that judgment. Review of the Kingham Suit judgment confirms that the primary—virtually, the only—issue that was the subject of that litigation was whether VecSec, VecProp, and Dill operated as alter egos of one another, an issue which the court in the Kingham Suit answered in the affirmative. Finally, such a finding was essential to a determination that Defendants should share equally in liability for Kingham's unpaid judgments. Thus, the record demonstrates that all four requisites for the availability of offensive nonmutual collateral estoppel have been met.

¶ 13 In determining whether the doctrine has been correctly applied, the Court in *Cities Service v. Gulf* held that this issue also requires an analysis of whether the defendant had a *"full and fair opportunity to litigate* the issue in the earlier proceeding." *Id.* at ¶ 15, 980 P.2d at 125. The Court listed the following factors that a trial court should consider in determining whether there was a "full and fair opportunity:"

> (1) whether the defendant had ample incentive to litigate the issue fully in the earlier proceeding; (2) whether the judgment or order for which preclusive effect is sought is itself inconsistent with one or more earlier judgments in the defendant's favor; and (3) whether the second action affords the defendant procedural opportunities unavailable in the first that could readily produce a different result. Other factors which can be relevant include: (1) whether the current litigation's legal demands are closely aligned in time and subject matter to those in the earlier proceedings; (2) whether the present litigation was clearly foreseeable to the defendant at the time of the earlier proceedings; and (3) whether in the first proceeding the defendant had sufficient opportunity to be heard on the issue. It is the trial court's application of these criteria which are reviewed under an abuse-of-discretion standard.

*Id.* at ¶ 15, 980 P.2d at 125. (Footnotes omitted).

¶ 14 The first factor—concerning a defendant's incentive to defend in the first action—also embraces a factor recognized by the *Parklane Hosiery* and *Lee v. Knight* courts going to whether the plaintiff could have joined in the earlier litigation. *See Parklane*, 439 U.S. at 329–31, 99 S.Ct. at 651–52; *Lee*, 1989 OK 50 at ¶¶ 9–10, 771 P.2d at 1005–06. As noted in *Parklane Hosiery*, "[t]he general rule should be that in cases where a plaintiff could easily have joined in the earlier action," or where application of offensive estoppel would be unfair to a defendant, a trial judge should not allow its use. 439 U.S. at 331, 99 S.Ct. at 651–52.

¶ 15 Although the judgment in the instant case does not reflect an express finding that Defendants had a "full and fair opportunity" to litigate the alter ego issue in the earlier case, the record reflects that such was the case and supports the trial court's decision to apply collateral estoppel. The 29–page Kingham Suit judgment reveals that Defendants vigorously resisted their creditor's attempt to

collect two judgments in the combined amount of more than $94,000. Although Defendants argued that Plaintiff should have intervened and joined as a plaintiff in the Kingham Suit because of the similarity in the two cases, Defendants did not contend that they had any less incentive to contest Kingham's arguments than they would have if Plaintiff had joined in that suit. In fact, because the judgments involved in the Kingham Suit were considerably larger than Plaintiff's judgment, the Kingham judgments posed a greater risk to Defendants than Plaintiff's judgment. Defendants had ample incentive to defend the Kingham Suit, and the record reflects that they did so. *See Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. at 651.

¶ 16 Clearly, both suits are extremely similar. The judgments at issue in the Kingham Suit were obtained against VecProp in late 2002 and early 2003, at virtually the same time Plaintiff obtained its judgment against VecProp. As described in the Kingham Suit judgment, the conduct that amounted to alter ego behavior between and among the Defendant entities occurred during the same time period that Plaintiff was attempting to collect its judgment, and was motivated by the same cause—a breach of contract judgment held by an unpaid creditor. That Plaintiff would attempt to assert collateral estoppel was also clearly foreseeable, as Defendants were well aware that Plaintiff had obtained and was trying to collect its judgment.

¶ 17 Finally, neither party contends that the Kingham Suit judgment is inconsistent with any other judgments, or that any other judgments regarding this issue have been entered in Defendants' favor. Nor are there any "procedural opportunities" that would be available to Defendants in this case that were not available in the earlier action.

¶ 18 In short, the relevant factors set forth in *Cities Service v. Gulf* as favoring application of collateral estoppel offensively are present in the case at bar. As stated by the Court therein:

> Where the parties' alignment and the raised legal and factual issues warrant and fairness to the parties is not compromised by the process, its application is appropri-

ate. It is indeed the proceeding's substance and the degree of due process inherent in it, rather than its form, which is the court's bellwether for the doctrine's application.

1999 OK 14 at ¶ 17, 980 P.2d at 126. (Footnote omitted).

¶ 19 Furthermore, we reject Defendants' argument that the doctrine is neither available nor appropriate to establish that Defendants were "alter egos" of each other in this case. As stated in Defendants' trial court brief: "The complete absence of any alleged undisputed facts showing the Plaintiff is suffering some inequity, coupled with the fact that the determination of the central issue of the alleged 'alter ego' is always a question of fact are issues mandating denial" of summary judgment.

¶ 20 Defendants' suggestion that collateral estoppel cannot apply to a determination of "alter ego" status solely because it is a "question of fact" misconstrues the doctrine. Collateral estoppel may apply to decided issues of law *or* of fact which were "actually litigated" and resolved in an earlier proceeding. *Restatement (Second) of Judgments* § 27 (1982); *see also Isokariari v. Hillcrest Med. Ctr.,* 2001 OK CIV APP 116, 33 P.3d 691. Indeed, § 59(5) of the Restatement specifically recognizes that the doctrine may be employed to establish the issue of "alter ego" in a proper case:

> A judgment against a corporation that is found to be the alter ego of a stockholder or member of the corporation establishes personal liability of the latter only if he is given notice that such liability is sought to be imposed and fair opportunity to defend the action resulting in the judgment.

¶ 21 In fact, other jurisdictions have held that a litigated alter ego claim may be used offensively. For example, in *In re Kilroy,* 357 B.R. 411 (Bankr.S.D.Tex.2006), the bankruptcy court held that both Texas and Delaware law would estop a debtor from denying that a limited liability company was his alter ego after a Texas state court determined, in earlier litigation to which the debtor was a party, that the company was his alter ego. The court specifically rejected the debtor's

contention that a finding of alter ego could not be employed offensively by a nonmutual plaintiff as a matter of law, stating:

> The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one.

*Id.* at 427 (quoting *Coca Cola, Co. v. Pepsi–Cola, Co.,* 172 A. 260, 263 (Del.Super.Ct.1934)). *See also Northern Tankers (Cyprus) Ltd. v. Backstrom,* 901 F.Supp. 72 (D.Conn.1995).

¶ 22 We also reject the argument that the trial court improperly applied collateral estoppel because Plaintiff failed to show an "inequity" which was peculiar to Plaintiff. By this argument, Defendants essentially assert: (1) a showing of "inequity" is essential to prove "alter ego"; (2) because "inequity" to *Plaintiff* was not at issue in the Kingham Suit, the issue litigated here is not identical to the issue litigated in the Kingham Suit; and (3) therefore, issue preclusion cannot apply. We disagree.

¶ 23 We note, initially, that Defendants *admitted in their trial court pleadings* that the Kingham Suit involved "the exact same factual and legal issues" as Plaintiff added to its amended petition. Moreover, proof of alter ego liability in general does not mandate that inequity to a specific party be demonstrated to prove that one company or individual is an alter ego of another.

¶ 24 Oklahoma's law of corporations recognizes that one corporation (or a shareholder) may be held liable for the acts of another if the other is determined to be merely an instrumentality or agent of the other corporation or shareholder. *See Gilbert v. Sec. Fin. Corp. of Okla., Inc.,* 2006 OK 58, ¶ 22, 152 P.3d 165, 175. In *Gilbert,* the Court stated that the factors relevant to determining alter ego hinge, not on inequity, but on control. The factors include:

> (1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate.

*Id.* at ¶ 23, 152 P.3d at 175.

¶ 25 We recognize that "alter ego" is an equitable concept, and, therefore, principles of equity necessarily come into play when deciding whether to find that an alter ego exists. However, case law does not suggest that a plaintiff who indisputably holds an uncollected judgment against a corporate defendant must prove any other damage or "inequity" as a result of the corporate defendant's failure to observe the corporate structure. Here, neither party disputes that Plaintiff has been unable to collect its judgment from VecProp, and the validity of that judgment is not challenged. To the extent an inequity needs to be proven, Plaintiff has shown it.

## CONCLUSION

¶ 26 Based on the record presented, we find that offensive nonmutual collateral estoppel was available in this case as a matter of law, and the trial court did not abuse its discretion in applying it to grant summary judgment in favor of Plaintiff. Its judgment is therefore affirmed.

AFFIRMED.

GOODMAN, P.J., concurs, and RAPP, J., not participating.