OSCN Found Document:GRAHAM v. CROW

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 GRAHAM v. CROW
2023 OK CIV APP 49
Case Number: 121559
Decided: 11/17/2023
Mandate Issued: 12/13/2023
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III

Cite as: 2023 OK CIV APP 49, __ P.3d __

 
ANDREA GRAHAM, Plaintiff/Appellant,
v.
RICHARD J. CROW and NANCY CROW, Defendants/Appellees,
and
CODY TAYLOR, Defendant.
APPEAL FROM THE DISTRICT COURT OF
NOBLE COUNTY, OKLAHOMA
HONORABLE LEE TURNER, TRIAL JUDGE
REVERSED AND REMANDED
Dan L. Holloway, Josh J. Holloway, HOLLOWAY, BETHEA & OTHERS, P.L.L.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant,
Shanda McKenney, ANGELA D. AILLES & ASSOCIATES, Oklahoma City, Oklahoma, for Defendants/Appellees.
THOMAS E. PRINCE, PRESIDING JUDGE:
¶1 Appellant, Andrea Graham, appeals the District Court's grant of summary judgment in favor of Appellees, Richard and Nancy Crow. This case involves a negligence claim stemming from an automobile accident in which the automobile collided with a stray cow. The foremost issue in this appeal is whether genuine issues of material fact are present in the appellate record concerning the claim that the Crows failed to exercise due care in maintaining their fence and that the cow escaped due to the alleged negligence of the Crow's. Upon review of the summary judgment record and applicable law, we conclude that the trial court erred in granting summary judgment because the record contains conflicting evidence concerning the Crows' alleged breach of their duty to maintain their fence. Accordingly, we reverse and remand for further proceedings.
BACKGROUND
¶2 This case arises out of the personal injuries Appellant, Andrea Graham, sustained in an automobile accident on May 12, 2019, during which the automobile in which she was riding collided with a cow. Graham filed this case exactly two years later, i.e., on May 12, 2021. The Crows filed their Motion for Summary Judgment on or about March 31, 2022. Graham filed her Response and Objection on April 20, 2022.
¶3 The vast majority of the relevant facts are undisputed for purposes of the Crows' Motion for Summary Judgment. For example: it was undisputed that Graham was a front seat passenger in a vehicle driven by Cody Taylor traveling eastbound on Highway 64 from Perry, Oklahoma; that the accident occurred at approximately 11:00, p.m.; that the vehicle struck the cow in the middle of the roadway and that the cow was a black angus; that the impact damaged the vehicle and required that the cow be put down by the Crows; that neither Graham nor Taylor saw where the cow had come from the evening of the accident; that the cow belonged to the Crows; and, that Graham, who was 29 weeks pregnant, was transported to the emergency room complaining of pain to her abdomen, lower back, and upper body, and was subsequently admitted overnight to the hospital for evaluation.
¶4 The central dispute in the Motion for Summary Judgment involved the date of the nine photographs which were alleged to be of the Crows' fence line. Taylor testified[1] that he returned to the scene of the accident the day after the accident to try to identify the location where the cow had escaped the fenced property. He testified that he took the various photos of the alleged damaged portion of the fence on May 13, 2019 (i.e., the day following the accident). The Court's review of the photos, while difficult to decipher due to the poor image quality, shows that some depict a portion of a fence which is weighed down, in part, by tree limbs and brush.[2] The Court also observes that the various photos raise an apparent question as to whether they all were taken on the same date because it is notable that some of the photos show mostly dry conditions, while some of the other photos (which were taken from inside a vehicle) depict an obvious large pool of water that is under and on both sides of the fence. The presence of water in some of the photos also suggests to the Court that, at the very least, a weather event occurred between the time that some of the various photos were taken. The Court further notes that a reasonable person could conclude from the photos that show a large pool of water that debris had, in fact, piled up and damaged the fence because of the presence of the water. Taylor's testimony added that he followed a cow's set of hoofprints from the roadway to a fence line, where he identified a damaged section of a fence that he believed to be the cow's point of escape from the fenced property. The Crows attempted to discredit the veracity of Taylor's testimony concerning the date of the photos by pointing out that three of the nine photos are date-stamped with the date of March 30, 2020, which is approximately ten months after the accident (a date that also is only about two weeks before Taylor filed his lawsuit against the Crows).
¶5 The Crows' Motion for Summary Judgment set out, as alleged, undisputed fact No. 6, in part, that "[t]he only photographs of the area where the cow allegedly got out were taken on or after May 20, 2019, after a torrential rainfall caused flooding in that area, which damaged the fence." Alleged, undisputed fact No. 6, as written, infers that the photos in question may be reasonably interpreted to depict damage to a fence line which had occurred at some point in time and further show that the damage had been caused by "torrential rainfall [which] caused flooding in that area, which damaged the fence." In response to alleged, undisputed fact No. 6, Graham answered "Denied" and added that "Plaintiff took photos of the area the following day, May 13, 2019."[3] Graham's response also attached the photos in question, along with excerpts from Taylor's deposition. In the Reply filed on May 26, 2022, the Crows argued, in part, that Graham's "'beliefs' regarding where the cow came from constitute inadmissible speculation . . . [and that] the photographs claimed to have been taken the day after the accident are clearly stamped '3/20/2020.' More than ten months after the accident at issue."
¶6 In further support of their Motion for Summary Judgment, the Crows submitted Richard Crow's sworn affidavit and their Interrogatory Responses. In Mr. Crow's Affidavit, he attested to visiting the pasture in the early afternoon on the date of the accident and did not notice any damage to the fencing. Mr. Crow maintained that he regularly monitored the condition of the fence and made necessary repairs to ensure it sufficiently contains the livestock. Mr. Crow also attested to the fact that, upon returning to the scene of the accident the following day, he was unable to identify any area where the cow could have escaped his property, nor has he ever been put on notice about his cows escaping until the accident at issue. The Crows' written discovery responses reiterated that Mr. Crow regularly monitors the condition of the fence surrounding the pasture, including the afternoon the accident occurred as well as the day following the accident. Graham's Response and Objection included, as an additional, supplemental fact, a portion of Taylor's deposition in which he responded "yes, sir" when asked whether he had traveled Highway 64 following this incident and found, in those subsequent travels, "the fence to be in the same condition as it was when . . . [he] first saw it?"
¶7 The trial court sustained the Motion for Summary Judgment from the bench on July 21, 2023, and subsequently entered a final Journal Entry of Judgment on August 9, 2023. The timely appeal followed.
STANDARD OF REVIEW
¶8 The appellate standard of review of a trial court's grant of summary judgment is de novo. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051; Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74, ¶ 13, 410 P.3d 1007, 1011; Kirkpatrick v. Chrysler Corp., 1996 OK 136, ¶ 2, 920 P.2d 122, 124 (orders granting summary judgment are subject to de novo review). De novo review involves a plenary, independent, and non-deferential examination of the issues presented. Benedetti v. Cimarex Energy Co., 2018 OK 21, ¶ 5, 415 P.3d 43, 45.
¶9 De novo review of a trial court's grant of summary judgment requires an examination of the record to determine what facts are material and whether there is a substantial controversy as to any material fact. See Sperling v. Marler, 1998 OK 81, 963 P.2d 577; Malson v. Palmer Broad. Grp., 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the nonmoving party. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Even where the facts are uncontroverted, if reasonable persons may draw different conclusions from the facts, summary judgment must be denied. Bird v. Coleman, 1997 OK 44, ¶ 20, 939 P.2d 1123, 1127.
¶10 Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. N.C. Corff P'ship, Ltd. v. OXY USA, Inc., 1996 OK CIV APP 92, ¶ 8, 929 P.2d 288, 292; Flowers v. Stanley, 1957 OK 237, 316 P.2d 840. When genuine issues of material fact exist, summary judgment should be denied and the question becomes one for determination by the trier of fact. Brown v. Okla. State Bank & Trust Co., 1993 OK 117, ¶ 7, 860 P.2d 230, 233. See Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 12, 352 P.3d 1223("[s]ummary judgment is not appropriate even where the facts are not disputed "if reasonable minds could reach different conclusions from the undisputed material facts.").
ANALYSIS
¶11 Appellant asserts 21 issues on appeal. We find these issues to fall under three, overarching categories.[4] First, whether a trial court's ruling of a motion for summary judgment in a companion case imposes any authority on the court's ruling in the present case.[5] Second, whether summary judgment is premature considering the current status of the discovery process.[6] Third, whether there exists a dispute over any material fact relating to Appellees' alleged breach of duty.[7] We address the third issue first because our ruling on that issue is dispositive of this appeal.
A. Whether Issues of Fact Exist That Preclude Summary Judgment on the Claim that the Cow Escaped Due to the Crows' Alleged Negligence.
¶12 Graham asserts that the Crows breached their duty of care by failing to adequately maintain the fence surrounding their property, thereby enabling the cow's escape which, consequently, caused the automobile accident at issue. To recover damages in an automobile accident with a domestic animal, a motorist must prove that the animal was either intentionally set loose or escaped due to negligence. Shuck v. Cook, 1972 OK 25, ¶ 22, 494 P.2d 306, 311. An owner is negligently responsible for a domestic animal's escape from his property when he knew, or should have known by conducting routine maintenance, that the animal's enclosure was inadequate to keep the animal contained. Carver v. Ford, 1979 OK 26, ¶ 10, 591 P.2d 305, 308--09 ("[a]n owner of an escaping animal should not be liable if, without his fault, the animal escapes enclosure such as generally required to restrain livestock."). See Jackson v. Lankford, 1998 OK CIV APP 174, ¶ 6, 970 P.2d 622, 624 (where the Court affirmed the award of summary judgment to the animal owner in a similar case because the plaintiff there did not present facts showing that "maintenance of the fence, or lack thereof, was the reason the bull escaped . . . [and the photographic evidence there showed] the place where the bull obviously jumped over the fence, but, it is still standing.").
¶13 Our review of the record on appeal makes clear that the condition of the Crows' fence remains in controversy. Beyond Taylor's photographs, Taylor's deposition testimony, and Richard Crow's affidavit, neither Graham nor the Crows provide further admissible evidence to substantiate their respective assertions of the fence's condition. Resolution of the Parties' conflicting testimony will require a trier of fact to weigh each party's credibility to determine whether the fence was adequately maintained prior to the accident at issue.
¶14 Our role on appeal is not to weigh the evidence, but to determine whether the materials submitted to the trial court indicate a substantial controversy exists as to any material fact. Plano Petroleum, LLC v. GHK Exploration, L.P., 2011 OK 18, ¶ 6, 250 P.3d 328. Based upon our review of the record, it is clear much of the dispute concerning the condition of the fence must be resolved through witness testimony. Disputed factual determinations that require weighing the credibility of witnesses and the weight of testimony must be left to the exclusive province of the jury, necessarily precluding summary judgment. Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 19, 352 P.3d 1223, 1228 (citing Barnes v. Okla. Farm Bureau Mutual Ins. Co., 2000 OK 55 ¶ 3, 11 P.3d 162). Accordingly, we find that the record contains enough evidence that a reasonable person might conclude that the Crows failed to exercise due care in maintaining their fence and, thus, that the cow escaped due to the alleged negligence of the Crow's.
¶15 The Court expresses no view on whether the Crows breached their duty of care. Our directive is simply that the evidence before this Court contains disputed material facts as well as undisputed material facts that could lead to conflicting inferences. Accordingly, we are compelled to reverse.
B. Whether the Trial Court's Ruling on the Motion for Summary Judgment in Taylor's Case Imposed Any Limitation on the Trial Court in this Case.
¶16 Graham insists the trial court's grant of summary judgment was improper because the trial court had previously considered and denied a substantively similar motion in the companion case arising from the same accident. Graham specifically contends that the trial court's denial of Mr. Crow's motion for summary judgment in Cody Taylor, et al. vs. Richard Crow, Noble County Case No. CJ-2020-15, should act to bar summary judgment in the instant case. Notwithstanding that Graham provides no authority for this quasi-collateral estoppel argument, because this issue may resurface in the trial court upon remand, we choose to address the issue here.
¶17 The doctrine of offensive, nonmutual collateral estoppel allows a plaintiff to "estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." Atkinson, Haskins, Nellis, Holeman, Phipps, Brittingham & Gladd v. Vector Sec., Inc., 2011 OK CIV APP 42, ¶ 8, 255 P.3d 453, 456 (citing Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979)). The use of offensive collateral estoppel in both federal and Oklahoma state courts requires: (1) the precluded issue be the same as that involved in the earlier action; (2) the issue was actually litigated; (3) it was determined by a final and valid decision; and (4) the determination was essential and necessary to the earlier result. Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 14, ¶ 14, 980 P.2d 116, 125. Oklahoma courts also require that the defendant had a "full and fair opportunity to litigate the issue in the earlier proceeding.[8]" Id. at ¶ 15. See Cities Serv. Co, 1999 OK 14, ¶¶ 14, 17. ("[w]here the parties' alignment and the raised legal and factual issues warrant and fairness to the parties is not compromised by the process, its application is appropriate.").
¶18 Graham argues that the trial court's ruling on the motion for summary judgment in the Taylor case is determinative in the instant proceedings. We disagree. Graham was not a party to the Taylor proceedings and, accordingly, is only entitled to assert an offensive, collateral estoppel defense for specific and essential issues which were actually, fully, and fairly litigated as well as determined by a final and valid decision.
¶19 Furthermore, Graham disregards all context surrounding the trial court's rationale for granting the Crows' motion for summary judgment in her case. Following both Taylor and Graham's responses in opposition to the Crows' motions for summary judgment in their respective proceedings, the trial court responded similarly to the motions from the two, separate cases. In Taylor's case, the trial court denied Richard Crow's motion for summary judgment "with leave to re-urge" after Richard Crow could be deposed, but the case was subsequently settled prior to the completion of Crow's deposition. In Graham's case, the trial court entered a journal entry on July 7, 2022, finding that additional discovery was necessary and holding the Crows' motion for summary judgment in abeyance to "to be re-urged at a later date" pending completion off the depositions of the parties. When the designated depositions were not complete over a year later, the trial court granted the Crows' motion for summary judgment in Graham's case on July 21, 2023.
¶20 Considering both decisions in their proper context, it is clear the trial court applied the same reasoning in its ruling on the substantively similar motions by allowing the separate Plaintiffs to complete discovery while also allowing Defendant(s) to re-urge their motions following the close of discovery. Accordingly, the trial court did not err in granting summary judgment based on Graham's quasi-collateral estoppel defense.
C. Whether Summary Judgment Was Premature in Light of the Discovery Status
¶21 In her Response and Objection to the Crows' Motion for Summary Judgment, Graham maintains that the Crows' motion was premature considering the current status of discovery. Specifically, Graham contends that discovery is still incomplete because the Crows have not yet been deposed and, accordingly, the trial court should have either denied the motion or granted a continuance for Graham to complete discovery. We choose to address this issue now even though we have held that, based on the appellate record, the entry of summary judgment was error, in light of the fact that this issue could resurface upon remand.
¶22 While Graham's argument is facially sound, it is procedurally deficient. As required by Rule 13(d) of the Rules for District Courts of Oklahoma, counsel for the party opposing summary judgment must provide an affidavit stating the reasons "the party cannot present evidentiary material sufficient to support the opposition." Upon receipt of the affidavit, the trial court may deny the motion for summary judgment without prejudice or it may order a continuance to permit the non-movant to complete discovery, including obtaining affidavits or taking depositions. OKLA. DIST. CT. R. 13(d).
¶23 In the instant case, although discovery is ostensibly incomplete, Graham's counsel failed to provide the necessary affidavit as required by Rule 13(d). Bittle v. Oklahoma City Univ., 2000 OK CIV APP 66, ¶ 10, 6 P.3d 509, 513. In the absence of a specific request for further discovery supported by an affidavit of counsel, we cannot say the trial court erred in refusing further discovery. Id.
CONCLUSION
¶24 Upon review of the record and consideration of the applicable law, we conclude the trial court erred in granting summary judgment because genuine issues of material fact are present in the appellate record concerning the claim that the Crows failed to exercise due care in maintaining their fence and that reasonable persons could conclude that the cow escaped due to the alleged negligence of the Crow's. The judgment of the trial court is, therefore, reversed, and this cause is remanded for further proceedings consistent with this Opinion.
MITCHELL, C.J., and BELL, J., concur.
FOOTNOTES
[1] Cody Taylor, who was initially named as a Defendant in this case, filed his own, separate lawsuit against the Crows, Case No. CJ-2020-15, Noble County District Court, State of Oklahoma. Taylor gave his deposition testimony in that case on or about September 14, 2020. Both parties in this case have relied on excerpts from the deposition testimony by Taylor. We note that the record of Taylor's case, viewable from www.oscn.net, shows that Taylor dismissed his case, with prejudice, on or about December 13, 2021. Taylor was dismissed by Graham from this case on February 27, 2023.
[2] The photographs that are in the appellate record are largely unintelligible and an examination of the photos on www.oscn.net is necessary in order to discern anything about what they may depict. The photographs viewable on www.oscn.net are difficult to discern as well.
[3] Taken at face value, Graham's response to alleged, undisputed fact No. 6 raises an issue of fact as to who took the photos in question. In contradiction to Graham's response to alleged, undisputed fact No. 6, Graham's additional fact No. 13 states, in part, that "Defendant, Cody Taylor, took pictures of the fence in the area of the incident the following day."
[4] Each of Appellant's alleged issues on appeal are detailed with their abridged counterpart, with the exception of Appellant's Issue 4, which states "whether Appellant was fault free in the accident." There is no dispute in the record as to Graham's free-from-fault status. We, therefore, need not address this issue.
[5] Appellant's Issue 2: Whether the fact that the trial court previously considered and denied the exact same motion for summary judgment in Cody Taylor, et al. vs. Richard Crow, Noble County Case No. CJ-2020-15 acts to bar summary judgment in Appellant's case.
[6] This issue was not garnered from the Petition in Error, but, instead, from Plaintiff's Response and Objection to Defendants' Motion for Summary Judgment.
[7] Appellant's Issue 1: Whether there exist material questions of fact in this matter precluding summary judgment in favor of Appellees; Appellant's Issue 3: Whether Appellees recklessly and negligently failed to maintain their premises and property in such a manner to prevent their cow from escaping and causing a collision between Appellees' cow and vehicle in which Appellant was a passenger of who was lawfully and properly on said roadway; Appellant's Issue 5: Whether Appellees' animals had escaped on prior occasions; Appellant's Issue 6: Whether Appellees failed to use reasonable care in the maintenance of their property; Appellant's Issue 7: Whether Appellees failed to take the necessary steps to restrain their cow; Appellant's Issue 8: Whether Appellees failed to use reasonable care in the maintenance of their fences; Appellant's Issue 9: Whether Appellees failed to take the necessary steps to prevent their cow from running at large; Appellant's Issue 10: Whether Appellees knew or should have known that their cow had escaped their property on several previous occasions; Appellant's Issue 11: Whether Appellees had knowledge, actual or constructive, of a defect in its fence surrounding their property prior to Appellant's motor vehicle accident; Appellant's Issue 12: Whether Appellant sustained damages as a result of Appellees' negligence; Appellant's Issue 13: Whether the evidentiary materials demonstrate disputed questions of material fact about whether Appellees exercised reasonable care in the maintenance of their fence and control of their animals; Appellant's Issue 14: Whether the defective condition existed for a sufficient period of time for Appellees to be advised of its existence by the exercise of ordinary care; Appellant's Issue 15: Whether an owner of livestock who also owns the land and fencing where the animals are kept has a duty to maintain fencing in an adequate condition to prevent the livestock from escaping and causing harm; Appellant's Issue 16: Whether negligence on the part of the livestock owner may be established by circumstantial evidence; Appellant's Issue 17: Whether the evidence is such that reasonable jurors could come to differing conclusions, summary judgment is wholly inappropriate; Appellant's Issue 18: Whether the question of whether a defective condition existed for a sufficient period of time for Appellees to be advised of its existence by the exercise of ordinary care are questions of fact for the jury under proper instructions from the court; Appellant's Issue 19: Whether the existence of facts or circumstances sufficient to put one on inquiry for purposes of constructive notice presents a question of fact appropriate for summary disposition; Appellant's Issue 20: Whether the fact that Cody Taylor visited the accident site the day after the accident and identified a location where he believed the cow to have escaped is sufficient evidence to resist Appellees' Motion for Summary Judgment; Appellant's Issue 21: Whether reasonable minds could differ on whether Appellees exercised reasonable care in the maintenance of their property.
[8] The Cities Serv. Co. court outlined factors to consider when determining whether a defendant had a full and fair opportunity to litigate the issue in the earlier proceeding, including: (1) whether the defendant had ample incentive to litigate the issue fully in the earlier proceeding; (2) whether the judgment or order for which preclusive effect is sought is itself inconsistent with one or more earlier judgments in the defendant's favor; (3) whether the second action affords the defendant procedural opportunities unavailable in the first that could readily produce a different result; (4) whether the current litigation's legal demands are closely aligned in time and subject matter to those in the earlier proceedings; (5) whether the present litigation was clearly foreseeable to the defendant at the time of the earlier proceedings; and (6) whether in the first proceeding the defendant had sufficient opportunity to be heard on the issue. The trial court's application of these factors are reviewed under an abuse-of-discretion standard. Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 14, ¶ 15, 980 P.2d 116, 125.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2011 OK CIV APP 42, 255 P.3d 453, 
ATKINSON, HASKINS, NELLIS, HOLEMAN, PHIPPS, BRITTINGHAM & GLADD v. VECTOR SECURITIES, INC.
Discussed

 
1996 OK CIV APP 92, 929 P.2d 288, 67 OBJ 3890, 
N.C. Corff Partnership, Ltd. v. OXY USA, Inc.,
Discussed

 
2000 OK CIV APP 66, 6 P.3d 509, 71 OBJ 1651, 
BITTLE v. OKLAHOMA CITY UNIV.
Discussed

 
1998 OK CIV APP 174, 970 P.2d 622, 69 OBJ 4329, 
Jackson v. Lankford
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1993 OK 117, 860 P.2d 230, 64 OBJ 2882, 
Brown v. Oklahoma State Bank & Trust Co. of Vinita
Discussed

 
1997 OK 42, 936 P.2d 940, 68 OBJ 1454, 
Malson v. Palmer Broadcasting Group
Discussed

 
1997 OK 44, 939 P.2d 1123, 68 OBJ 1161, 
Bird v. Coleman
Discussed

 
1957 OK 237, 316 P.2d 840, 
FLOWERS v. STANLEY
Discussed

 
1972 OK 25, 494 P.2d 306, 
SHUCK v. COOK
Discussed

 
1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, 
Carmichael v. Beller
Discussed at Length

 
1996 OK 136, 920 P.2d 122, 67 OBJ 2065, 
Kirkpatrick v. Chrysler Corp.
Discussed

 
2011 OK 18, 250 P.3d 328, 
PLANO PETROLEUM, LLC v. GHK EXPLORATION, L.P.
Discussed

 
2015 OK 56, 352 P.3d 1223, 
FARGO v. HAYS-KUEHN
Discussed at Length

 
2016 OK 74, 410 P.3d 1007, 
TIGER v. VERDIGRIS VALLEY ELECTRIC COOPERATIVE
Discussed

 
1979 OK 26, 591 P.2d 305, 
CARVER v. FORD
Discussed

 
2018 OK 21, 415 P.3d 43, 
BENEDETTI v. CIMAREX ENERGY COMPANY
Discussed

 
1998 OK 81, 963 P.2d 577, 69 OBJ 2638, 
Sperling v. Marler
Discussed

 
1999 OK 14, 980 P.2d 116, 70 OBJ 762, 
Cities Service Co. v. Gulf Oil Corp.
Discussed at Length

 
2000 OK 55, 11 P.3d 162, 71 OBJ 3219, 
BARNES v. OKLAHOMA FARM BUREAU MUTUAL INS. CO.
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA